The last case on for argument or at least discussion with the attorney for Mr. Dometz is Dometz v. City of Long Beach. May it please the court, I'm Wayne Schaefer for the appellant, Howard Dometz. The decision of the court below should be reversed because the conclusion of the court that the plaintiff was required to file an EEOC complaint within 300 days of the date on an interest arbitration award finds no support in the law. Rather, it's clear here that the defendants failed to meet their burden on their 12B6 motion to show that they had pled and proved that plaintiff had failed to file an administrative complaint within 300 days of when he either knew or should have known of critical facts of both his injury and his claim. Now . . . What is it that he didn't know? He didn't know that . . . He knew the award had been issued, right? The question is not at some point he did know. The question is whether the defendants demonstrated, you know, in the context of a 12B6 motion to dismiss that he knew at a point in time which rendered his subsequent EEOC claim untimely. And that kind of gets to the crux of this, Your Honor, because when it became apparent that the defendants had failed to meet that burden, they never did identify a specific point at which they alleged that he became aware of this. And there are reasons really why this, in particular, is a situation where this defense really was appropriately relegated to an affirmative defense which could have been developed, explored, and resolved through discovery and litigation. You're not arguing in your papers or in your complaint that your client did not know about the award at the time it was issued? Yeah. We're claiming that we are not . . . Your Honor, the burden is on the defendant to identify a specific point in time when he knew about the award. We're claiming as a matter of law it's not sufficient for them to simply point to an interest arbitration award, say the date of the interest arbitration award was May 29, 2013, therefore you start counting 300 days from that date. Did your client know about it at that time? There's no evidence that he did know about it, Your Honor. There's nothing in the record indicating that he knew about it at that time. And when you think of how interest arbitration awards are rendered, the fact is it really would have been extremely unlikely that he would have known about it on that date because the May 29th date is the date on the actual written document that the arbitrator signed the award. There's no evidence that the parties to the arbitration even knew about the award on that date. No evidence in the record as to how the award was distributed. And more significantly, Your Honor, please bear in mind, my client at the time the award was issued was retired. He was not in the PBA. His interests were not . . . the PBA was under no obligation to represent him in the voluntary interest arbitration proceeding. And the city, as a matter of state law, was under no obligation to bargain over the benefit which was ultimately relinquished. The evidence, the pleadings from which we're entitled to every favorable inference on this motion, as far as reading them, alleged that there was a past practice that provided that when wage awards were issued and arbitration awards came out increasing wages, that people who had previously retired but during the term covered by the award would have separation payments recalculated to include the wage increases. That's a past practice that's alleged. Could you explain to me how that turns on age rather than date of retirement? Because, Your Honor, the fact is the way this worked, and again, we just would cite as a backdrop both this Court's decisions in . . . No, I'm not . . . just tell me how . . . Yes, Your Honor. Explain this to me because that's central to your claim, correct? That it's an age issue, not a date of retirement issue. Once we get beyond the statute question, that is true, Your Honor. All right, so explain . . . On the merits. On the merits. It's really quite simple. The award said that anybody who retired during the pendency of the award would not have their separation payment recalculated. In order to retire . . . 2008 to 2013. Correct, Your Honor. Okay. In order to . . . That's the date of retirement. He retired in 2012. No, no, no, but that is a . . . that is not pegged to age. It's pegged to date of retirement between 2008 and 2013. They didn't . . . there's no indication in the record, Your Honor, that there's an express declaration by the city that we're not going to pay you because you were above a certain age. Okay. It's nothing like that. In the case law, Your Honor, we believe does not require that. Rather, what the case law indicates is that when age is inextricably linked to the modus operandi pursuant to which the benefit is denied, as it was here, there's enough to withstand a 12B6 motion that you fail to at least plead a prima facie case. Here, this is the manner in which it operated. The award stated that anyone who retired during the pendency of the award would not be entitled to a separation payout. The fact is, when you look at the eligibility requirements for a service retirement, as was the case in Auerbach and in Abramson, the fact is, as a practical matter, you had to be over the age of 40 before you retired. So anyone who retired during the period covered by the award who received a separation payout and then was told later that that would not be recalculated was within the protected class. In contrast, people who are, again, awarded the wage increases but separate from employment later, who retire later- After. Right. They are obviously outside the protected class. They are under the age of 40. They are not subject to the- But many of them could be over the age of 40. Excuse me? Many of them could be over the age of 40. And the record might develop that, Your Honor. Did you make some sort of statistical allegation? I can't recall. Because what you're really talking about is you're making a disparate impact claim. Your Honor, I believe that- Are you making a disparate impact claim? We plead that in the alternative. That's true. Because we could see how a finder of fact might conclude that it's a facially neutral policy. But in reality, Your Honor, our primary argument is really tailored to both Abramson and Auerbach in the sense that in both those cases, they were akin to what we have here. Different treatment afforded to different public sector employees based on their eligibility for retirement. Now, it's true. In both those cases, as a practical matter, those eligibility requirements included in instances that the teachers reached the age of 55. Okay? But the reality is the defendants in those cases raised the same arguments that the defendants raised here. Basically that our hands were tied. We didn't rely on the fact that there was an age component in those service eligibility requirements. We simply went by the service eligibility requirements, whatever they were. And the point is, here, if you look, Your Honor, the fact is there is a viable disparate treatment claim under Auerbach and Abramson. Because here, it's clear that there's no way that the status in a protected class was not intricately linked with the denial of the benefit. But again, the fundamental problem we have here is that the court decided, essentially, that because plaintiff did not specifically come forward as part of its pleading obligation, with an allegation that they became aware of the claim within a period which would render it timely under the 300-day requirement, that dismissal was appropriate. There's nothing in the law that supports that kind of conclusion. And with regard to our motion for reconsideration, we respectfully pointed out to the court that, really, the question here, which we were hoping the court would address, was whether, if, as we contend, the law requires defendants to carry this burden as an affirmative defense or, alternatively, on a 12B6 motion, whether they met their burden. And the court's response on the motion for reconsideration was basically, well, we did consider it. But the problem is, other than a conclusory assessment, there was really nothing in the court's decision, either the initial decision or the motion on reconsideration, that indicated that they did that. Thank you, Mr. Schaffer. Thank you. Your Honor, I would just like to point out the court's information as well. In accordance with the order dismissing the action, plaintiff did commence a state court action alleging New York State human rights law claims. Defendants moved in that case as well for dismissal under 3211, raising the same argument here, that there was not a substantive human rights law claim. And that motion was denied. So you have a case proceeding, your client has a case proceeding in state court. Under the New York State human rights law claims. Thank you, Your Honor. Thank you. Thanks for letting us know that. I will ask the clerk, please, to adjourn court. Court is adjourned.